UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF MISSISSIPPI
SOUTHERN DIVISION

DEBRA DIANE DAVIS                                                                              PLAINTIFF

VERSUS                                                    CIVIL ACTION NO. 1:14CV215-HSO-RHW

CAROLYN W. COLVIN
Acting Commissioner of Social Security                                                DEFENDANT

### PROPOSED FINDING OF FACT AND RECOMMENDATION

Plaintiff Debra Davis appeals the Social Security Administration's (SSA) denial of her application for Disability Insurance Benefits (DIB) and Supplemental Security Income (SSI). Davis alleges disability since January 31, 2011, due to COPD, lumbar disc disease, cervical disease, depression, and other impairments. Doc. [11] at 130, 134, 158. Davis was over 50 years old for the relevant time period. *Id.* at 24. She has a high school education and past relevant work as a cashier and manager. *Id.*

As part of the review process, she requested a hearing before an Administrative Law Judge (ALJ). The ALJ conducted a hearing on October 30, 2012. *Id.* at 30-50. On November 9, 2012, the ALJ issued a decision finding that Davis was unable to perform past relevant work; however, the ALJ concluded that Davis remained capable of performing other work in the national economy. *Id.* at 15-25. The Appeals Council denied Davis' request for review. *Id.* at 4-7. Davis then filed the instant civil action. Pending before the Court is Davis' motion for summary judgment. Doc. [13].

### Law and Analysis

The federal district court reviews the Commissioner's decision only to determine whether the final decision is supported by substantial evidence and whether the Commissioner used the

proper legal standards to evaluate the evidence. *Brown v. Apfel*, 192 F.3d 492, 496 (5th Cir. 1999); *Martinez v. Chater*, 64 F.3d 172, 173 (5th Cir. 1995). If the court determines the Commissioner's decision to be supported by substantial evidence, then the findings are conclusive and the court must affirm the decision. *Richardson v. Perales*, 402 U.S. 389, 390 (1971); *see also* 42 U.S.C. § 405(g). This standard requires supporting evidence that is "'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson*, 402 U.S. at 401 (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). The court is not permitted to "reweigh the evidence in the record, nor try any issues *de novo*, nor substitute our judgment for the judgment of the [Commissioner], even if the evidence preponderates against the [Commissioner's] decision." *Johnson v. Bowen*, 864 F.2d 340, 343 (5th Cir. 1988). "'Conflicts in the evidence are for the [Commissioner] and not the courts to resolve.'" *Brown*, 192 F.3d at 496 (quoting *Selders v. Sullivan*, 914 F.2d 614, 617 (5th Cir. 1990)). While the court may alter the Commissioner's decision if based upon faulty legal analysis, the court should defer to the Commissioner's legal conclusions if they are within a permissible meaning of the statutory or regulatory language. *Chevron, U.S.A., Inc. v. National Resources Defense Council*, 467 U.S. 837, 843–44 (1984).

      A claimant bears the burden of proving the existence of a medically determinable impairment that has prevented the claimant from engaging in substantial gainful employment. 42 U.S.C. § 423 (d)(1)(A); 42 U.S.C. § 423 (d)(5). The Social Security Administration (SSA) utilizes a five-step sequential process to determine whether a claimant is disabled. 20 C.F.R. § 404.1520(a), § 404.920(a). Under this analysis, the ALJ may decide a claimant is disabled if he finds that (1) the claimant is not employed in substantial gainful activity; (2) the claimant has a

severe, medically determinable impairment; (3) the claimant's impairment meets or equals one of the listings in appendix 1 to subpart P of § 404; (4) the impairment prevents the claimant from performing any past relevant work; and (5) the impairment prevents the claimant's ability to adjust to performing any other work. *Id.*

The claimant initially bears the burden of proving disability under the first four steps, but the burden shifts to the SSA for the fifth step. *Chapparo v. Bowen*, 815 F.2d 1008, 1010 (5th Cir. 1987). Therefore, if the claimant proves that he or she is unable to perform past relevant work, the SSA must demonstrate that the claimant can perform another occupation that exists in significant numbers in the national economy. The burden then shifts back to the claimant to establish that he or she cannot perform this alternative employment. *Id*.

At issue in this case is the ALJ's determination at step 5 of the evaluation process that Davis is capable of performing an occupation that exists in significant numbers in the national economy. In reaching this conclusion, the ALJ relied on the medical-vocational guidelines (grids). Davis argues that the ALJ improperly relied on the grids because of the existence of significant non-exertional limitations. Rather, the ALJ should have relied upon the testimony of a vocational expert to establish the existence of jobs in the national economy that the claimant can perform given her combination of exertional and non-exertional limitations.

The Commissioner argues that the alleged non-exertional limitations cited by Davis are either a component of unskilled light work or the limitations do not diminish her ability to perform a full range of light work. Because the non-exertional limitations do not significantly affect her residual functional capacity, the Commissioner argues that the ALJ was permitted to rely on the grids. The Commissioner further argues that at the hearing the ALJ elicited testimony

from a vocational expert who identified three jobs that an individual with Davis' age, education, past relevant work, and residual functional capacity could perform.

Under the regulations, impairments can be either exertional or non-exertional.  *See Sykes v. Apfel*, 228 F.3d 259, 263 (5th Cir. 2000).  Impairments are classified as exertional if they affect the claimant's ability to meet the strength demands for sitting, standing, walking, lifting, carrying, pushing and pulling.  *Id.*  All other impairments are classified as non-exertional.  *Id.*  When a claimant suffers only exertional impairments, the Commissioner may rely exclusively on the medical-vocational guidelines to determine whether work exists in the national economy that claimant can perform.  *Newton v. Apfel*, 209 F.3d 448, 458-59 (5th Cir. 2000); *Fraga v. Bowen*, 810 F.2d 1296, 1304 (5th Cir. 1987).  Use of the grids is only appropriate when the claimant suffers from exertional impairments, or if it is determined that the non-exertional impairments do not significantly affect the claimant's residual functional capacity.  *Id.*  If the claimant suffers non-exertional impairments or a combination of exertional and non-exertional impairments that significantly affect the claimant's residual functional capacity, then the Commissioner must rely on a vocational expert to establish that suitable jobs exist in the national economy.  *Id.*

In this case the ALJ concluded that Davis had severe impairments of chronic obstructive pulmonary disease, lumbar disc disease, cervical disc disease, obesity, and affective disorder.  Doc. [11] at 17.  He stated that these impairments "*significantly* interfere with claimant's physical and mental ability to do basic work-related activities."  *Id.* (emphasis added).  The ALJ further determined that Davis retained the residual functional capacity to perform light work but with the additional limitations that she only crouch, crawl, stoop, kneel, balance, and climb stairs occasionally.  *Id.* at 19.  He further restricted her to simple well-defined tasks with simple

instructions and simple decisions.  She can interact only occasionally with the general public.  *Id.*  She can adjust to a work routine provided that the work does not require her to perform highly exacting tasks or dangerous work activities, and does not require her to supervise others or to handle customer complaints.  *Id.*  At one point in the decision, the ALJ found that Davis is "capable of performing work at the light exertional level *with additional restrictions*."  *Id.* at 24 (emphasis added).  He went on to state that Davis "is now limited to work performed *at less than the full range of light work*."  *Id.* (emphasis added).  However, when evaluating Davis' disability at step 5 of the analysis, the ALJ contradicted himself, stating that Davis has a "residual functional capacity for the full range of light work".  *Id.* at 24.  Based on this lack of clarity regarding whether Davis is or is not capable of a full range of light work, the undersigned harbors doubts about the ALJ's conclusions regarding Davis' disability.

      The Commissioner cites to several social security rulings and argues that the non-exertional impairments attributed to Davis are simply components of unskilled light work and therefore do not diminish her capacity to perform a full range of light work.  Doc. [15] at 7-8.  The undersigned does not find the Commissioner's arguments persuasive.  First, social security rulings are not binding on this Court.  *Myers v. Apfel*, 238 F.3d 617, 620 (5th Cir. 2001).  Second, the social security rulings cited by the Commissioner use qualifying language that suggests that the non-exertional impairments may still have *some* impact on a claimant's ability to work.  Third, although he later contradicted the finding, the ALJ did find that Davis was limited to less than the full range of light work, thereby suggesting that the non-exertional impairments did have an effect on her ability to work beyond what normally would be expected for someone capable of light work.

Davis' affective disorder impairment is illustrative.  The ALJ clearly attributed non-exertional impairments to Davis, including but not limited to affective disorder.  Doc. [11] at 17.  Furthermore, the ALJ concluded that the affective disorder was one of the impairments that "significantly" interfered with her ability to do basic work-related activities.  *Id.*  As a consequence, the ALJ placed numerous restrictions on Davis related specifically to her affective disorder.  *Id.* at 21.

Controlling Fifth Circuit precedent dictates that when a non-exertional impairment significantly affects an individual's residual functional capacity, then the ALJ may not rely on the medical-vocational guidelines.  Instead, the ALJ must rely on a vocational expert to establish that jobs exist in the national economy that the claimant is capable of performing.  *See Newton*, 209 F.3d at 458-59; *Farga*, 810 F.2d at 1304.  Although the ALJ elicited testimony from a vocational expert regarding Davis' limitations and jobs available to her based on those limitations, the ALJ did not rely on the vocational expert to reach his decision at step 5.  *See* Doc. [11] at 24.  There is no reference to the vocational expert's testimony or opinions at step 5 of the ALJ's analysis.  *Id.*  In fact, other than to acknowledge that a vocational expert testified at the hearing, there is no mention of the vocational expert's testimony or opinions in the ALJ's decision.  *Id.* at 15.  Instead, the ALJ impermissibly relied exclusively on the medical-vocational guidelines despite the presence of non-exertional impairments that the ALJ concluded significantly interfered with Davis' ability to perform work.

## **RECOMMENDATION**

Based on the foregoing, the undersigned recommends that Debra Davis' [13] Motion for Summary Judgment be GRANTED to the extent that her claim for DIB and SSI be remanded to

the Commissioner for further proceedings.

## NOTICE OF RIGHT TO APPEAL/OBJECT

Pursuant to 28 U.S.C. § 636(b)(1), any party who desires to object to this report must serve and file written objections within fourteen (14) days after being served with a copy unless the time period is modified by the District Court.  A party filing objections must specifically identify those findings, conclusions and recommendations to which objections are being made; the District Court need not consider frivolous, conclusive or general objections.  Such party shall file the objections with the Clerk of the Court and serve the objections on the District Judge and on all other parties.  A party's failure to file such objections to the proposed findings, conclusions and recommendation contained in this report shall bar that party from a de novo determination by the District Court.  Additionally, a party's failure to file written objections to the proposed findings, conclusions, and recommendation contained in this report within fourteen (14) days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the proposed **factual findings and legal conclusions** that have been accepted by the district court and for which there is no written objection. *Douglass v. United Services Automobile Association*, 79 F.3d 1415, 1428-29 (5th Cir. 1996).

SO ORDERED, this the 8th day of June, 2015.

/s/ *Robert H. Walker*
ROBERT H. WALKER
UNITED STATES MAGISTRATE JUDGE